Sean Potts for the petitioner Moise Quijonez-Rodas. Mr. Quijonez is the petitioner. He's married to a United States citizen and he has two United States citizen children, one 16 years of age and one 14 years of age. As well, his mother is a United States citizen. He's resided in the United States since he was 18 years old and he's presently eligible to adjust his status to a lawful permanent resident. Mr. Quijonez motioned the Immigration Court to reopen his case where in 1996 he was ordered removed in absentia. He was ordered removed in absentia because he failed to appear. At that time, his wife was suffering from HIV and she subsequently succumbed to AIDS. Mr. Quijonez at that time failed to appear because he was unable to appear. He was caring for his wife and caring for his two young children. In the motion to reopen before the Immigration Court, Mr. Quijonez detailed and explained why he wasn't able to appear. It seems to me that you have an awfully hard road to hoe on that, first of all, because it was now many, many years after she died before he ever came forward and because there's actually no showing in the record that she was ill with AIDS at the time he was supposed to appear as opposed to a little later than that. So what about the question that we asked you to address in our written submission? In Mr. Quijonez's motion to reopen, he wanted to reopen the case on two different grounds. One was, as I mentioned earlier, the absentia order, to rescind the absentia order. But the other was because presently he's eligible to adjust his status based on the petition filed by his United States citizen wife. At the time in which he was served with the order to show cause, the order to show cause in its warning stipulated that anyone who failed to appear will be precluded from applying for any additional relief for a period of five years. The order was in 1996. Five years after 1996, after the preclusion period, Mr. Quijonez acted diligently in obtaining a position to apply for new status. But he's so diligent. It was three years, wasn't it, after that? Well, no, there are diligent. He did act diligently, and that was detailed in the motion to reopen. He was unable to do anything for a period of five years after the removal order. In 2001, April 5th, 2001, that's five years to the exact date, on April 25th, he obtained a waiver from INS. It's called a waiver under the statute INA I-245. What that waiver does is that it allows individuals who are in unlawful status, it waives that unlawful status. So he obtained the waiver under INA I-245, and then his mother, who was a lawful permanent resident, had applied for a family petition for him on September 30th, 2001. And then in November of 2001, he advanced his visa category by his mother becoming a naturalized citizen. In September 3rd of 2002, he married his present wife, and on September 20th of 2002, she filed a family petition for him. Throughout 2001, 2002, he was acting diligently to put himself in a position to adjust his status. That petition was pending from September 30th up until the recent present. During this time, that's when he had motioned the court to reopen his case. He explained in his motion to reopen his case his failure to appear and his heartache, but he also, and more importantly, he explained that, now I'm presently eligible to adjust my status under these new forms of relief. During that period from 1996 to 2001, he was precluded from doing anything by statute, 242BE1, precluded him for five years. But when that time elapsed, he took diligent steps in which to secure lawful status in this country. While his petition was pending through his year as a citizen wife, that's when he filed his motion to reopen. And he indicated to the immigration judge that, now I'm in the position of adjusting my status once this visa petition is approved. And do you understand those to be two separate routes, such that the 180-day limitation with regard to the rescission of the in absentia order doesn't apply to this, to the adjustment of status problem? I'm sorry, Your Honor. So that the exceptional circumstances, temporal limitations don't apply to this adjustment of status. Is this separate? This is why we asked you about this MS case. How do the two pieces fit together? Well, MS is exactly on point. And MS, it's very aligned to our case. MS attempted to reopen the case, one, because she failed to appear, the absentia issue. But secondly, because now she was eligible for a new form of relief. And independent of her failure to appear, that new form of relief presented a question of law for the court. Is there a time limit applicable to the adjustment of status relief? Well, there would be a time limit where the motion to reopen is simply based on the new form of relief. But it's important to keep in mind that the motion to reopen was based on two forms of relief. And when the motion to reopen is based on an absentia as well as a new form of relief, there's an exception to that, not to that time limit. When a motion to reopen is based on absentia, the time limit is 180 days. However, that time limit may be told where there is a justifiable reason and also where the petitioner has acted diligently. And in this case, it's clear that the petitioner acted diligently. As soon as the statutory bar of five years passed, within 25 days, he obtained a waiver of his unlawful presence. At that same point, his mother filed a petition for him. Several months later in November, following April, she naturalized her status to a United States citizen. And then in the subsequent year in 2002, that's when his present wife, his U.S. citizen wife, applied for a family petition for him as well. So although there is a time limit, equitable tolling comes into play because he can clearly show that he acted with due diligence. Did you argue equitable tolling below? I don't remember seeing those particular words. Did you have that? Well, in our motion to reopen, we did put forth all the facts and put forth the fact that presently this individual is eligible for new relief. And we articulated what efforts he's taken in order to secure this new relief. And we asked the court in our motion to consider the totality of the circumstances. I thought what MS held essentially was that the 180 days can't possibly apply to the adjustment of status, because at least at that point, there was a five-year limitation. After the five years, you were entitled to apply for adjustment of status. So you couldn't possibly apply within the 180 days. Well, that goes to tolling as well. Why is it going to tolling? Why doesn't it just go to the fact that these are two separate routes and the 180 days just doesn't apply to this? But then I'm asking you what does apply to it? Well, I believe when you look at the time limits, you have the 90-day time limit and you have the 180-day time limit. The 180-day time limit would normally apply. But because in this situation, it's impossible to meet the 180-day time limit because there's a statutory preclusion. I suppose you could adjust that by saying, okay, you had to apply 180 days after he became eligible. After he became eligible. And then what happened is that that can be equitably tolled, but he can show that he acted in accordance. Equitable tolling under our case law requires some misbehavior. I don't think equitable tolling is useful to you. Equitable tolling under our case law requires that there be some misbehavior essentially by the agency. That didn't occur here. I think what we look to is whether or not at the time in which he was eligible to apply for adjustment, if he took actions to adjust the status. And in this case, he took all actions to adjust the status. But what case law do you have that supports that? Equitable tolling under the immigration laws has always been understood to require some inducement through misbehavior by the agency. Is that incorrect? That's not my understanding. Do you have any case law to support that? Yes, when we look at Itaburi v. INS, and that's a Ninth Circuit case, site 321F3889, this dealt with equitable tolling where the petitioner was the victim of ineffective assistance of counsel. And the court cited two factors in which to take into consideration. That first factor is whether or not the petitioner acts with due diligence. And the second factor is to look as to whether or not the opposing party is going to be prejudiced by the tolling of the state. What we have is – Do you have any cases outside the ineffective assistance of counsel context? I assume that that's not an issue here. No, that's not an issue here. But I think that what's important about that case is that it gives us a guidepost in which to determine whether or not we will equitable toll. The purpose of equitable tolling is to make sure the right thing happens in these cases. In this case, when the motion was put forward to the judge to consider the totality of the circumstances, looking at the totality of the circumstances, here we have an individual who's residing in the United States for nearly 20 years. His children are a United States citizen. His wife is a United States citizen. His parents are a United States citizen. And he's presently eligible for the relief. And then he's taken every due diligent effort to apply for the relief. The importance of that Ninth Circuit case that dealt with equitable tolling, although in an ineffective assistance of counsel, just sets a guidepost in which we use to follow to make sure the just thing happens in these situations. And that guidepost is due diligence and prejudice to the other side. The government isn't prejudiced by this petitioner adjusting his status. Okay, your time is up. We'll give you a minute in rebuttal. Thank you very much. Counsel? Welcome back. Thank you. Good afternoon. And may it please the Court, I am Josh Bronstein for the Attorney General. The Board simply did not abuse its discretion in this case because petitioner's motion reopened was filed more than seven years after the statutory time limit for doing so expired. In this case, the petitioner has shown utter disregard for the timeliness requirements of the INA and, I would submit, total disregard for U.S. immigration laws. But he wasn't eligible to apply for adjustment of status for the bulk of that period, right? Your Honor, he's not. Because of the absentia, Your Honor. Well, he remains. First of all, there is no evidence that he even is the recipient of a granted visa petition. And he is subject to an order of removal. So the question of his adjustment of status isn't before the Court. The question is he didn't he move originally on two grounds, one rescission and the other adjustment of status? No, Your Honor. We submit that he did not move for adjustment. He noted in his motion to reopen that he could adjust. He cited no statute or regulation that suggested another time requirement, timeliness requirement for a motion to reopen. There's nothing in his motion to reopen before either the immigration judge or the Board that argued anything other than the rescission statute and the question of whether he missed his immigration proceeding for exceptional circumstances. There's a big problem with that. And the big problem is that he is out of time under whichever regulation or statutory scheme is applied. He had either to, if matter of MS applied, which it simply does not, and I'll get to that later, but if matter of MS applied and he was to be judged under the 90-day reopening timeframe. But we have remanded recently a couple cases in this Court to deal with that problem. And there's a serious sort of statutory glitch in terms of how those pieces fit together because of the five-year time period. And there is actually a case in which there was a remand and then the agency then remanded to the IJ without just mentioning the timing problem. So there's confusion about that, at least. I'm sorry? I'm sorry, Your Honor. Not in this case there isn't. That's a different story. But you're telling me that it's clear that the 90 days applies even where the five-year limit applies. And that I don't think is correct. Or we don't know if it's correct. Let's just put it that way. The agency really hasn't given us its view on that question yet. Well, let me move forward and say this. If the time limit began to run for his motion to reopen, he can't do anything unless his proceedings are reopened. If, for some reason, which I can't imagine, but if for some reason the time limit. But your position is that MS does not establish two separate lines and that you have to reopen the in absentia order within 180 days in order to apply five years later? Is that what you're saying? That is not my position. We filed a letter brief and we gave a copy of the court today. I know. It's very complicated. I read it. We didn't have a whole lot of time to read it since we got it about five minutes before we walked in here. I understand. Let me explain MS, Your Honor. A matter of MS held that if an alien who did not receive oral warnings of the consequences of a failure to appear at a deportation hearing is ordered to report in absentia and he later moves to reopen, not to challenge his deportation order, but to apply for new relief, such as adjustment of status. Then if he didn't receive the oral warnings, because if he did receive the oral warnings, he's barred. But if he did not receive the oral – I thought he was only barred for five years, or at least at this point was only barred for five years. And I'll get to that, Your Honor. Okay. If he didn't receive the oral warnings, then he can then move to reopen to apply for adjustment of status, because the five-year bar wouldn't apply. Okay. The problem for Petitioner in this case is matter of MS dealt with, and any case thereafter must deal with, the problem of there is a timeliness requirement for reopening. And in his case, in the case of MS, the Board applied the 90-day time limit, which was shorter than 180 days, but it wasn't a problem because the Petitioner acted with actual diligence in that case. And I will contrast what the Petitioner in that case did with what the Petitioner did in this case. But foremost, and what is absolutely fundamental, is, one, MS doesn't apply. You don't get to that question unless the alien did not get oral warnings of the failure, the consequences of the failure to appear. Now, in this case, it is uncontested and uncontradicted that the Petitioner did receive the statutory oral notice. So he was barred for five years. That doesn't help him at all, because he was always, and under MS, he was always and remains obligated to file a motion to reopen, either within 90 days, if that oral warning had not been given, and he could file a motion to reopen and not have to show exceptional circumstances. There are two cases that I'd like you to go look at and then come back. Just recent cases in which there were remands, as I understand it, on this precise problem. One is called Eribio-Blanco, which both of these are unpublished opinions. And another one is called Mangiz-Garcia, M-O-N-G-E-S-C-A-R-C-I-A. And in both of them, there have been recent remands about how the 90-day limit and the five-year ban interact. With all due respect, Your Honor, if we're going to talk about unpublished cases, this Court has recently held that this very thing in the Kaluuya case, this is unpublished, and so we didn't cite it in our letter brief. But the Court stated, and this is our exact position, we lack jurisdiction to review Kaluuya's assertion that the IJ and BIA erred under INRI-MS in applying the wrong standard in evaluating his motion, because he raises this argument for the first time before us. That's right, Your Honor, definitely cases both ways, for sure. And so the question is whether we ought to get the agency to address it. Well, I don't think that there's any ambiguity, and I'm willing to stand firm and explain exactly why that is. But let me finish reading this part. We simply note that Kaluuya's motion was untimely by either standard, as it was filed nearly seven years after the in absentia deportation order was entered. That is the identical situation here. The Court went on to say, look, it doesn't matter if he was subject to the rescission statute or the general reopening statute. He still has a timeliness requirement. Well, you see, I could understand a rule that said the following, because there is this five-year preclusion or an adjustment of status, right? So I can understand a rule that said once the five years are up, then you have to act, say, either within 90 days or within 180 days, or something, pull the time limit over. But I don't see how you could say that you have to apply for an adjustment of status within 90 days when you're not allowed to apply for an adjustment of status within 90 days. But, Your Honor, that analysis suggests that he is somehow has a constitutional right to apply. Well, not constitutional right. That the statute which says that you can't apply for five years contemplates that after five years he can apply. Well, he's, but he's still subject to an order of removal. And there are time limits that are only, in other words, Your Honor, if what you're suggesting is possible, that an alien just has to go under the radar for five years, then that would be an incentive for every alien. Well, what does the statute mean if it doesn't mean that? What it means is there are other avenues. There are other avenues that he could become eligible to apply for relief. Could you explain, because I had the same question. How can an alien apply for adjustment of status without filing a motion to reopen? Is that, is there a way? There is no way to do that. No, Your Honor. And that's the problem. And motions to reopen are governed by one of two time limits. Either 90 days, or if it's an extension order, it's 180 days. One follow-up question on that. If there are not deportation proceedings, or if the deportation proceedings have terminated, or if the alien has been deported and then has come back into the country, so there really isn't anything to reopen. Why would an alien have to file a motion to reopen in order to have adjustment of status? Well, if an alien is deported, I mean, Your Honor, if he leaves the country, he has either voluntarily departed or self-deported or been deported. And then the person can come back in after some timeframe or apply for readmission. So at that point, in trying to get adjustment of status, would that have to be via a motion to reopen, or is there some other avenue? No, if an alien is, an alien who is outside of this country, without authority to enter the country, has to apply for a visa, or someone has to apply on his behalf, or he has to apply for a visa. So what, how does your thesis give any possibility of applying after the five years? It gives none. There's no way to implement what appears to be a statutory permission after five years to apply for adjustment of status. Am I wrong about that? No, I don't know. What he could do is, he could leave the country, which he should have done. He's been in this country for 18 years illegally, and that's what we're skipping over. No, Your Honor, he could have left, he could have appeared for his proceeding originally, and he could have said, Your Honor, I'd like to get voluntary departure, and he could have left without being barred for any period of time. I understand that, but there's another statutory provision that says even if you are barred, the bar is up for five years. Yes, but it doesn't mean that you're automatically eligible for reopening. But how would you reopen it if you have to reopen it within 90 days of the original order, but you're not eligible to apply for this for five years? I just need some way to make sense of this. Well, because, Your Honor, either one of them applies or the other applies. In his case, he was required within 180 days, because he had an in absentia order of deportation, to have that order rescinded, at which point he would have gone before an immigration judge, and if he were eligible to adjust at that point, if the judge found that there were exceptional circumstances, he could have reopened and then applied for any relief available. This is what the statute says. Any alien against whom a final order of deportation is entered in absentia and so on shall not be eligible for the relief described in Paragraph 5 for a period of five years. So this only applies to people who already had a final order of deportation and are in absentia. That's correct. Okay. How does somebody, it seems like a fair implication that after five years he can apply for adjustment of status, right? Only if he were eligible to reopen. He can, here's how he would do it, Your Honor. Okay, but how would he reopen? He'd have to reopen 180 days after the original rescission order. The penalty is that he can't apply to adjust his status for five years. However, what, again, we're skipping over is his obligation to leave the United States for some period, five years. If he's out for five years. Okay, then what? Now, if he's out for five years and there is a visa currently available to him. But he still is an alien against whom a final order of deportation was entered in absentia. And then he would have the five-year bar to adjustment of status. And he wouldn't have to get a reopening at that point. No, Your Honor. If once the time frame and any attendant bars to, if he's forcibly removed. If an alien leaves voluntarily under an order of voluntary departure, there isn't a bar to reentry. But there would be a bar to both, there would be a bar to both reentry and to adjustment. And now I would note that today, Your Honor, that statute is a 10-year bar, which is. I understand that, but we're not talking about today. We're talking about this. No, no. What I'm saying is if you're wondering how and why it exists, it's a penalty. It says, under no circumstances may you get these discretionary form of relief. It doesn't mean that you may then thereafter ignore the timeliness requirements for motions to reopen. But let me just ask you procedurally because I'm trying to understand the actual procedural steps. If the person leaves the country, voluntary departure, whatever, subject to this five-year bar, comes back into the country legally, can that person then adjust his or her status. If there is a visa. Without a motion to reopen in the 90 days. Absolutely, Your Honor. Because then. That's what I wanted to know. Right. If he is otherwise eligible. But you don't have to file. Because he left? That's why? Because he left? Yes, Your Honor. Because he has to be. If he's in this country, if he's in this country, he remains under a final order of deportation, now called removal. And he leaves the country and serves whatever time he's required due to the statutory bar. He can then have, under the right circumstances, if he's otherwise eligible, he may then return to the United States. Legally. Legally. And he doesn't then need to seek reopening of these proceedings because they're over. He has left the country and there is finality. Which is what. Just a minute. The relief described in paragraph five is adjustment of status. And that applies to people who are in the country, not people who aren't in the country. Your Honor, you can adjust your status from outside of the country. Well, you can apply for a visa. But that's not. You can apply for a visa. That's not. You don't have to adjust your status. If you're out of the country. If you were deported, you're out of the country. And after some period of time, you can apply for a visa. But that's not what this is directed at. This is directed, it seems to be, precisely at somebody who's in the country. And who's applying for relief from an order of deportation via an adjustment of status. Your Honor, his proceedings. I mean, I don't. I think the fact that there is a five-year bar under this statutory scheme in no way mandates the conclusion. Or even, in my view, suggests the conclusion that the timeliness requirements for reopening don't apply. That you must serve your five years. Because, Your Honor, the five-year bar does not kick in if the alien files within 180 days a successful motion to rescind. Exactly. Explaining why he wasn't there. And at that point, there is no five-year bar. This petition didn't do that. I wish you'd go back and try and look at the statute. And maybe we'll have to ask for briefs if we think the issue is fairly raised here. Because so far, I'm not understanding what you're saying. I know you're trying. And I know you fervently believe it. But the explanation you gave us before, which is that it only applies to people out of the country, is clearly not so. So there has to be another one. The explanation. Well, I don't have. And, you know, Your Honor, it is not necessarily an obvious thing as to why Congress put the five-year bar in there. But the fact that it's not obvious does not suggest a conclusion in any way that there's no timeliness requirement for filing. I mean, how both the 90-day limit and or the 180-day limit and the five-year limitation on adjustment of status can live in one universe. So far, I haven't heard one. Well, Your Honor, I think I should go back to the well-established premise that the government has an interest in finality and removal proceedings. Let's look at this petitioner's timeline and talk about, you know, why it would be fair to find that the mere existence of a five-year bar means that after five years you may reemerge and whatever after acquired equity you may have. Well, I can think of an answer to that, which is then you run the 90 days from that period. And he still loses. But at least it's an answer. Well, and I was going to lead with that, Your Honor. He would still lose. He waited almost 17 months from the time he was married to his second wife to even file a motion to reopen. So even if the clock didn't begin to run, which is what I started to say earlier, even if it didn't begin to run until his wife, his second wife had actually filed a petition for an alien relative, he would still be out of time under any motion to reopen time frame. So there is no relief for motion to reopen based on this petitioner's motion. There is no construction that could be given to this time frame. I don't understand the talk about being diligent. I mean, I don't know if he was diligent in, you know, marrying his second wife or what exactly the diligence was. But that's not even implicated here. Yeah, you agree that the equitable tolling concepts don't apply to this. Clearly not. Clearly not. He never raised it. And I would like to make a point very briefly about the fact that he has never raised this issue. He's never challenged the proper statutory. He has from the beginning. I need to look back at the original motion you saved and asked for adjustment of status. In this court he certainly has asked for that. And I need to look back and see what he asked for earlier. Well, and again, I would note that the board and immigration judge were alerted to only the rescission statute in his motion. If you look at. He says the immigration proceedings should be reopened because the respondent now has relief in the form of adjustment of status through his U.S. citizen wife. That's in his January 29th, 2004 motion to reopen his second. But the question is, he didn't cite to matter of MS. And he did not in any way challenge the application. And he proceeded under the belief, clearly, that he was required to show exceptional circumstances under the 180-day rescission time frame. So he was proceeding under a single statutory and regulatory scheme. And there's no question that that's where he thought he belonged. So to suggest. Thank you very much. And I appreciate your argument. And it was, if it's not the final answer, it was helpful in getting towards it. So thank you very much. Counsel will give you, say, two minutes. In 2001, there was a provision in the law which provided that individuals who are in the country unlawfully, there's a waiver that will be available for them. And from December of 2002, April 31st of 2001, that waiver was called 245-I. So all those individuals who are in the country unlawfully, whether they're in the country unlawfully and have been in proceedings before, or they're just in the country unlawfully undocumented, if they file a timely petition before that cutoff date, that provides them with a waiver of their unlawful presence. And on April 30th of 2001, exactly five years and 25 days after the preclusion, he obtained that waiver. He obtained that waiver through the petition his lawful permanent mother had, his mother who was a lawful permanent resident had applied for a family petition for him. And that gave him that waiver. So Congress did intend to address those individuals who were in the country unlawfully by providing this waiver. He applied for that waiver, and he did it in a diligent fashion. Then subsequent to that, he took the necessary steps to adjust the status, eventually under his wife having that visa petition available. When he initially filed his motion to reopen for the immigration judge, that's in the Certified Administrative Record at page 75, he specifically explained that his exceptions for failing to appear, but more importantly that presently he is prima facie eligible to adjust. So the immigration judge was on notice that he was asking for this case to be reopened on two separate grounds. One, because he had an exceptional circumstance explaining why he didn't appear, but more importantly because presently he has a waiver waiving his unlawful presence and that he's prima facie eligible to adjust under his lawful permanent citizen wife. Okay, thank you very much, counsel. Thank you. The case of Keonis Rodas v. Gonzalez is submitted. We will take a short recess, quite a short one, and we'll come back to the last two cases. Thank you very much.
judges: Berzon, Ikuta, Singleton (Alaska)